FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 1 2 2002

*[signature]*
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EBERARDO VALDEZ, a/k/a
Eberardo (Lalo) Valdez,

    Petitioner,

v.    Civ. No. 01-334 MV/RLP

ERASMO BRAVO, Warden, *et al.*,

    Respondents.

## MAGISTRATE JUDGE'S ADDITIONAL PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

    1.    On June 7, 2001 this court entered its proposed findings and recommended disposition [Doc. 11]. (The facts of the case are fully set forth in that document and will not be repeated here except as required for clarity.) Mr. Valdez raised several claims for relief, including insufficiency of the evidence for his conviction of being an accessory to second degree murder and prejudice from the state court's improperly tendering a felony murder instruction to the jury. This court recommended that the petition be denied.

    2.    Mr. Valdez objected to the proposed findings. The district court appointed counsel for Mr. Valdez and remanded to this court for reconsideration of two issues: (1) whether the evidence was sufficient to support his convictions; and (2) whether the felony murder instruction prejudiced the defendant. Memorandum Opinion and Order, [Doc. 12].

---

[1] Within ten (10) days after a party is served with a copy of the Magistrate Judge's Additional Proposed Findings and Recommended Disposition ("Proposed Findings") that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections with the United States District Court to the Proposed Findings. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Proposed Findings. If no objections are filed, no appellate review will be allowed.

3. In its Memorandum Opinion and Order, the district court stated that it could find no basis in the record for the New Mexico court's statement that Mr. Valdez knew or should have known that his companion was stabbing and killing the decedent while Mr. Valdez was outside of the decedent's home. Further, the district court could find no basis in the record for the New Mexico Court of Appeals' (NMCOA) finding that the stabbing took place both inside and outside of the decedent's home. Finally, the district court found compelling Mr. Valdez's argument that the improper jury verdict "improperly influenced the jury and likely resulted in a compromise verdict." Counsel were asked to address the two issues.

4. Standard of Review. Mr. Valdez's petition is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 *et seq.*

> After AEDPA, a federal court may not grant habeas relief on a claim adjudicated on the merits in state court unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," . . . or "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding[.]"

*Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001) (quoting § 2254(d)(1) and (2)).

5. These statutory standards have been construed by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 420 (2000):

> A state court decision is contrary to clearly established federal law under section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently

2

than [the Supreme Court] has on a set of materially indistinguishable facts."

*Mitchell*, 262 F.3d at 1045 (quoting *Williams*, 529 U.S. at 412-13) (brackets by the court).

6. Under § 2254(d)(2), a state court's decision is an unreasonable application of federal law "'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *id.* at 412). "The Supreme Court has cautioned 'that an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.'" *Id.* (quoting *id.*) (emphasis in the original).

7. <u>Sufficiency of the Evidence</u>. The controlling Court precedent on this issue is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979): "[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318 (emphasis by the Court).

8. Mr. Valdez's arguments on this issue concern his conviction under accessory liability. He contends that the NMCOA "erred in upholding Mr. Valdez's second degree murder conviction based merely on his knowledge of an intended fight, his assault on Smith, and his warning to companions that the police were coming. Reply Brief at 4. New Mexico law requires that the accessory's intent be the same as the principal's, and Mr. Valdez argues that there was no evidence, let alone sufficient evidence, of his intent to kill the victim who was stabbed to death inside the decedent's trailer while Mr. Valdez was engaged in a fistfight outside of the trailer.

3

11.     So, too, with this case. The evidence, viewed in favor of the prosecution, is that Mr. Valdez willingly accompanied friends whom he knew were going to the home of individuals to get into a fight. His willingness was shown by driving his own vehicle in tandem with the others. He knew that one of the individuals was angry because the intended victims had jumped his cousin. He admitted he went along to "back up" Jerrold. The individuals stormed the door of the trailer where the victims resided. Even if there is no evidence that Mr. Valdez entered the trailer, he went along with the group and observed what occurred and, when one victim exited the trailer he participated in the battery upon that individual. When police arrived, he alerted his companions to get out and left at the same time they did. There is no evidence he attempted to leave the scene prior to the arrival of the police, thus implying his willing participation in the attacks. At no time did he render aid to either victim. This scenario is no different from that in *Carrasco*, *i.e.*, his "intent can be inferred from behavior which encourages the act or which informs the confederates that the person approves of the crime after the crime has been committed." 946 P.2d at 1079. This evidence was sufficient to convict Mr. Valdez in accordance with the standard set forth in *Jackson v. Virginia, supra*.

12.     <u>Improper Jury Instruction</u>. The jury was provided with instructions on felony murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. *See* Record Proper 85, 88-90, 94-95. Under New Mexico state law, the instruction on felony murder was improper and should not have been given to the jury. "The Supreme Court has stated that the argument that a jury instruction is incorrect under state law is not

5

9.      "An accessory must share the criminal intent of the principal." *State v. Carrasco*, 946 P.2d 1075, 1079 (N.M. 1997). "This intent can be inferred from behavior which encourages the act or which informs the confederates that the person approves of the crime after the crime has been committed." *Id.* It is not necessary that the aider or abettor intended or foresaw the results of the principal's acts, only that he shares the requisite intent. *State v. Dominguez*, 853 P.2d 147, 156 (N.M. Ct. App.), *cert. denied sub nom., Ortega v. State*, 852 P.2d 682 (N.M. 1993). Thus, where the defendant's accomplices robbed a convenience store and committed aggravated battery on the store clerk and the crime of false imprisonment, defendant was properly charged with all of those crimes as an accomplice where he drove the "getaway" car after commission of the offenses. *Carrasco*, 946 P.2d at 1080.

10.     In reviewing the defendant's claim that he was convicted on insufficient evidence, the *Carrasco* court determined that "a rational jury *could* reasonably determine that Defendant intended the criminal activity and that his role was to keep the car engine running outside the store in order to facilitate a fast getaway once his companions robbed the store." *Id.* (italics by the court). The court then went on to say, that "[o]f course, a rational jury *could* infer based on this evidence that Defendant did not have the intent required for these offenses." *Id.* (italics by the court). The point, the court said, was that the "evidence here is not so thin that we can say as a matter of law that *no* rational jury could find the required facts to support conviction . . . ." *Id.* (italics by the court).

4

a basis for federal habeas relief." *Hale v. Gibson*, 227 F.3d 1298, 1324 (10th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), *cert. denied*, 533 U.S. 957 (2001).

> The appropriate question on habeas review is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.". . . The instruction must be viewed in the context of the instructions as a whole and the trial record. . . . For this review, we apply a harmless error analysis.

*Id.* (quoting *id.*).

13. The proper harmless error standard to be used is that announced in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *Hale*, 227 F.3d at 1324. That standard is whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. "If the reviewing court is in 'grave doubt' as to the harmlessness of an error, the habeas petitioner must win.'" *Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1996)).

14. Mr. Valdez's argument is that because "[t]he same evidence supporting a guilty verdict on second degree murder also supported a guilty verdict on felony murder[,]" it is likely that the jury's verdict of second degree murder is a compromise; *i.e.*, without the improper instruction, the jury might well have convicted Mr. Valdez of manslaughter. Petitioner's Memorandum Brief at 17. In rejecting this argument below, the NMCOA stated:

> Nor do we believe that the jury's decision to convict Defendant of second degree murder, rather than voluntary or involuntary manslaughter, necessitates the conclusion that the improper felony murder instruction influenced the jury's verdict. The trial court presented the jury with a full panoply of step-down

6

> instructions--all the way down to involuntary manslaughter. If, as Defendant suggests, the jury wanted to give him a "break," it could have found him guilty of either of the two lesser homicide crimes. Instead, after fully considering the evidence before it, the jury concluded that Defendant was an accessory to second degree murder.

Memorandum Opinion and Order, Exhibit I to Answer, at 4.

15. This court finds nothing impermissible about the NMCOA's reasoning. Habeas relief may only be granted when a state court unreasonably applies clearly established federal law or that court unreasonably determines facts in light of the evidence presented. *Woodford v. Visciotti*, -- U.S. --, 123 S.Ct. 357, 359-60 (2002). Although Mr. Valdez speculates that the result might have been different, there is nothing in the record -- and viewing the instructions as a whole -- that would lead this court to believe that the felony murder instruction had a "substantial and injurious" effect in determining the verdict. *Brecht, supra* .

16. The jury was instructed on the crimes of felony murder, second degree murder, voluntary manslaughter and involuntary manslaughter. Jurors were told that "[y]ou must consider each of these crimes. You should be sure that you fully understand the elements of each crime before you deliberate further." Record Proper 94 (Jury Instruction 12). The jury was then instructed to consider each of the crimes in order, proceeding to the next one only after unanimous agreement that the defendant was not guilty of the crime under consideration. *Id.* Felony murder was the first crime charged. *Id.* at 85 (Jury Instruction 3). Necessarily, the jury found Mr. Valdez not guilty on that "crime." Second degree murder was next and the jury found him guilty as charged.

7

17.   This is not a case such as that presented in *Price v. Georgia*, 398 U.S. 323 (1970) in which the jury was instructed on murder and voluntary manslaughter and the defendant was retried on the same two charges when the jury convicted him of the lesser offense. Applying a harmless error analysis, the Court stated that "we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence." *Id.* at 331.

18.   Here, the jury was instructed on four levels of homicide and told to consider each one separately. As noted above, the evidence at trial was sufficient for a rational jury to convict Mr. Valdez of second degree murder. Voluntary manslaughter requires a finding of provocation; there was no evidence that Mr. Valdez was provoked. Instead, the evidence showed a willing participant in a violent enterprise. The error presented by the felony murder instruction was harmless.

## RECOMMENDED DISPOSITION

I recommend that the petition be denied and this case be dismissed with prejudice.

Richard L. Puglisi
United States Magistrate Judge